UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARA ROYCE; SARAH CLARK; TIFFANY BROWN; and KRISTI CARAWAY,<br><br>　　　　　　　　　　　　Plaintiffs,<br>v.<br>ROB BONTA, in his official capacity as Attorney General of California,<br>　　　　　　　　　　　　Defendant. | Case No.: 3:23-cv-02012-H-BLM<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>[Doc. No. 4.] |

　　On October 31, 2023, Plaintiffs Sara Royce, Sarah Clark, Tiffany Brown, and Kristi Caraway (collectively, "Plaintiffs") filed a complaint against Defendant Rob Bonta, in his official capacity as Attorney General of California ("Defendant"). (Doc. No. 1.) On November 29, 2023, Defendant filed a motion to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. No. 4.) On January 8, 2024, Plaintiffs filed a response in opposition to Defendant's motion to dismiss. (Doc. No. 6.) On January 12, 2024, Defendant filed a reply. (Doc. No. 7.) On March 11, 2024, the Court held a hearing on the matter. Mariah Gondeiro appeared on behalf of Plaintiffs and Darin Lee Wessel appeared on behalf of Defendant. For the reasons below, the Court grants Defendant's motion to dismiss with leave to amend.

# BACKGROUND

Plaintiffs are four mothers with school-aged children who reside in California. (Doc. No. 1, Compl. ¶¶ 7, 10, 13, 17.) Plaintiffs allege that their religious beliefs forbid them from vaccinating their children. (Id. ¶¶ 2, 8, 11, 15, 19.) Plaintiffs further allege that their children are unable to enjoy the benefits of a public and private education because California's compulsory vaccination law requires all students to receive numerous vaccines to attend public or private school. (Id. ¶¶ 2, 9, 12, 16, 20.)

Under California law, children are required to receive immunization against certain infectious diseases prior to being admitted to any public or private elementary or secondary school, child care center, day nursery, nursery school, family day care home, or development center. Cal. Health & Saf. Code § 120335(b). Specifically, children are required to be immunized against the following diseases: (1) diphtheria; (2) hepatitis B; (3) haemophilus influenzae type b; (4) measles; (5) mumps; (6) pertussis (whooping cough); (7) poliomyelitis; (8) rubella; (9) tetanus; (10) varicella (chickenpox); and (11) "[a]ny other disease deemed appropriate" by the California Department of Public Health ("CDPH"). Cal. Health & Saf. Code §§ 120325(a), 120335(b).

Prior to January 1, 2016, students could apply for medical and personal belief exemptions to the immunization requirement. See Cal. Stats. ch. 35. Since January 1, 2016, personal belief exemptions have been prohibited pursuant to California Senate Bill 277 ("SB 277").[1] Cal. Health & Saf. Code § 120335(g)(1). Moreover, effective July 1, 2016, school authorities may not unconditionally admit for the first time any child to preschool, kindergarten through sixth grade, or admit any child to seventh grade, unless the child either has been properly immunized, or qualifies for other exemptions recognized by statute. Cal. Health & Saf. Code § 120335(g)(3). SB 277 further

---

[1] SB 277 was enacted in 2015 and took effect on January 1, 2016. See Cal. Stats. 2015 ch. 35. SB 277 amended California Health and Safety Code Sections 120325, 120335, 120370, and 120375, added Section 120338, and repealed Section 120365. Id.

provides that personal belief exemptions on file at a private or public elementary or secondary school, child day care center, day nursery, nursery school, family day care home, or development center prior to January 1, 2016, would be honored through each of the designated grade spans (i.e., birth to preschool; kindergarten and grades one to six inclusive, including transitional kindergarten; and grades seven to twelve, inclusive), until the unvaccinated child enrolls in the next grade span.  Cal. Health & Saf. Code § 120335(g)(1)–(2).  In enacting SB 277, the California Legislature expressed its intent to provide "a means for the eventual achievement of total immunization of appropriate age groups" against the ten specified infectious diseases in Sections 120325 and 120335. Cal. Health & Saf. Code §§ 120325(a), 120335(b).

There are exceptions to California's immunization requirements.  First, vaccinations are not required for any child in a home-based private school or a child who is enrolled in an independent study program and does not receive classroom-based instruction.  Cal. Health & Saf. Code § 120335(f).  Second, children who qualify for an individualized education program ("IEP"), pursuant to federal law and Section 56026 of the California Education Code, may not be prohibited from accessing any special education and related services required by his or her individualized education program based on vaccination status.  Cal. Health & Saf. Code § 120335(h).  Lastly, children may be medically exempt from the immunization requirements if a licensed physician states in writing that "the physical condition of the child is such, or medical circumstances relating to the child are such, that immunization is not considered safe."  Cal. Health & Saf. Code § 120370(a) (West 2016), current Cal. Health & Saf. Code §120370(a)(1)–(2).

Furthermore, SB 277 was amended to provide that any immunizations beyond the ten specified in Sections 120325 and 120335 may only be mandated after action by CDPH to add the new immunizations, and only "if exemptions are allowed for both medical

///
///
///

reasons and personal beliefs."[2]  Cal. Health & Saf. Code § 120338.  California law also allows conditional admission for students who are homeless, in "migrant" status, in foster care, or in military families, pending the school district or child obtaining proof of vaccination status or otherwise completing the required vaccinations.  See Cal. Edu. Code §§ 48204.7, 48850, 48852.7, 49069.5, 49701; Cal. Health & Saf. Code §§ 120340, 120341.

On October 31, 2023, Plaintiffs filed a complaint for injunctive and declaratory relief against Defendant, challenging the constitutionality of SB 277 under the Free Exercise Clause of the First Amendment.  (Compl. ¶¶ 57–74.)  By the present motion, Defendant moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' complaint in its entirety with prejudice for failure to state a claim upon which relief can be granted.  (Doc. No. 4-1 at 9, 30.)

## DISCUSSION

### I. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted.  See Conservation Force v. Salazar, 646 F.3d 1240, 1241 (9th Cir. 2011) (citing Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001)).  Federal Rule of Civil Procedure 8(a)(2) requires that a pleading that states a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The function of this pleading requirement is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "enough

---

[2]  This case is not about emergency use COVID-19 vaccines.  Rather, this case is about immunization against the ten childhood diseases specified in Sections 120325 and 120335.  See Cal. Health & Saf. Code §§ 120325(a), 120335(b).

facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. Accordingly, dismissal for failure to state a claim is proper where the claim "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008); see Los Angeles Lakers, Inc. v. Fed. Ins. Co., 869 F.3d 795, 800 (9th Cir. 2017).

In reviewing a Rule 12(b)(6) motion to dismiss, a district court must "'accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff.'" Los Angeles Lakers, 869 F.3d at 800 (quoting AE ex rel. Hernandez v. Cty. of Tulare, 666 F.3d 631, 636 (9th Cir. 2012)). But a court need not accept "legal conclusions" as true. Iqbal, 556 U.S. at 678. "Further, it is improper for a court to assume the claimant "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). In addition, a court may consider documents incorporated into the complaint by reference and items that are proper subjects of judicial notice. See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010). If the court dismisses a complaint for failure to state a claim, it must then determine whether to grant leave to amend. See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995). "A district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." Id. (citation omitted).

There are two standards of review to a challenge based on the Free Exercise Clause

of the First Amendment: rational basis and strict scrutiny.  See Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1075–76 (9th Cir. 2015).  Under rational basis review, the challenged law is presumed to be valid and must be upheld if it is "rationally related to a legitimate governmental purpose." Id. at 1084 (citation omitted).  "[S]trict scrutiny requires the State to further 'interests of the highest order' by means 'narrowly tailored in pursuit of those interests.'"  Tandon v. Newsom, 593 U.S. 61, 64–64 (2021) (citing Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 546 (1993)).  The parties disagree on the appropriate standard of review in this case.

## II.   ANALYSIS

The Free Exercise Clause of the First Amendment, as incorporated to the states through the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  U.S. Const., amend. I; Cantwell v. Connecticut, 310 U.S. 296, 303–04 (1940).  To merit protection under the Free Exercise Clause, a religious claim must be "sincerely held" and "rooted in religious belief, not in 'purely secular' philosophical concerns." Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994) (citations omitted).  Moreover, religious beliefs "need not be acceptable, logical, consistent, or comprehensible to others" in order to be protected under the Free Exercise Clause.  Thomas v. Review Bd. Of Indiana Emp't Sec. Div., 450 U.S. 707, 714 (1981).

"The right to exercise one's religion freely, however, 'does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that [his or her] religion prescribes (or proscribes).'"  Stormans, 794 F.3d at 1075 (quoting Emp't Div. v. Smith, 494 U.S. 872, 879 (1990)).  Accordingly, a neutral law of general applicability is subject to rational basis review "even if the law has the incidental effect of burdening a particular religious practice."  Church of Lukumi Babalu Aye, 508 U.S. at 531 (citation omitted).  "For laws that are not neutral or not generally applicable, strict scrutiny applies." Stormans, 794 F.3d at 1076 (citing Church of Lukumi Babalu Aye, 508 U.S. at 531–32).

     The Supreme Court has long endorsed state and local government authority to impose mandatory student vaccinations in order to protect the health and safety of other students and the public at large. See <u>Jacobsen v. Commonwealth of Massachusetts</u>, 197 U.S. 11 (1905); <u>Zucht v. King</u>, 260 U.S. 174, 175–77 (1922) ("[I]t is within the police power of a state to provide for compulsory vaccination."); <u>Prince v. Massachusetts</u>, 321 U.S. 158, 166–67 (1944) ("The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death."). Federal courts, including courts within this circuit, routinely analyze mandatory vaccination cases under rational basis review and regularly reject Free Exercise challenges to mandatory vaccination laws. See, e.g., <u>We The Patriots USA, Inc. v. Connecticut Off. of Early Childhood Dev.</u>, 76 F.4th 130 (2d Cir. 2023), <u>petition for cert. filed</u> (Dec. 14, 2023) (No. 23-643); <u>Doe v. San Diego Unified Sch. Dist.</u>, 19 F.4th 1173 (9th Cir. 2021); <u>Whitlow v. California</u>, 203 F. Supp. 3d 1079 (S.D. Cal. 2016) (denying motion for preliminary injunction against SB 277 and concluding no likelihood of success on the merits for Free Exercise claim). Courts also consistently hold that religious exemptions to vaccine mandates go beyond what the Constitution requires. See, e.g., <u>Phillips v. City of New York</u>, 775 F.3d 538, 543 (2d Cir. 2015); <u>Whitlow</u>, 203 F. Supp. 3d at 1084 ("[I]t is clear that the Constitution does not require the provision of a religious exemption to vaccination requirements, much less a [personal belief exemption].").

     As an initial matter, Defendant argues that Plaintiffs' objections to SB 277's vaccination mandate are not rooted in any recognized religious doctrine and therefore, are nothing more than subjective personal beliefs that do not warrant protection under the Free Exercise Clause of the First Amendment. (Doc. No. 4-1 at 9, 21–23.) Conversely, Plaintiffs argue that their claim is based on sincerely held religious beliefs and are thus protected under the Free Exercise Clause. (Doc. No. 6 at 17–18.)

     After accepting the factual allegations of the complaint as true and construing them in the light most favorable to Plaintiffs, see <u>Los Angeles Lakers</u>, 869 F.3d at 800, Plaintiffs have sufficiently alleged that their claim is sincerely held and rooted in religious belief.

(See Compl. ¶¶ 8, 11, 15, 19.) Because Plaintiffs have adequately alleged that their beliefs are sincerely held and rooted in religious belief, the Court now turns to Defendant's alternative arguments.

Defendant argues that SB 277's repeal of California's prior personal belief exemption in 2016 does not violate the Free Exercise Clause of the First Amendment because SB 277 is a neutral law of general applicability. (Doc. No. 4-1 at 23–27; Doc. No. 7 at 9–13.) Thus, Defendant argues that rational basis review is the correct standard of review but even if the Court applies strict scrutiny, SB 277 still survives. (Doc. No. 4-1 at 23–29.) Plaintiffs argue that strict scrutiny applies because SB 277 treats comparable secular activity more favorably than religious exercise. (Doc. No. 6 at 18–21.) Plaintiffs further argue that while it is unnecessary for the Court to determine whether SB 277 survives strict scrutiny at this stage, SB 277 nevertheless fails strict scrutiny. (Id. at 22–23.)

### A.     Neutrality

The Court first considers whether SB 277 is a neutral law. A law is not neutral if the government "proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." Fulton v. City of Philadelphia, 593 U.S. 522, 533 (2021) (citing Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rights. Comm'n, 584 U.S. 617, 636–39 (2018)). A law may fail the neutrality prong either facially or operationally. Church of Lukumi Babalu Aye, 508 U.S. at 533–40. "A law lacks facial neutrality if it refers to a religious practice without secular meaning discernable from the language or context." Stormans, 794 F.3d at 1076 (quoting Church of Lukumi Babalu Aye, 508 U.S. at 533). A law lacks operational neutrality if, despite being facially neutral, it operates in such a way that it "impermissibly attempt[s] to target religious practices through careful legislative drafting." Id. (quoting Church of Lukumi Babalu Aye, 508 U.S. at 535–37). That is, despite not referencing religion, the law is designed to target "religious conduct for distinctive treatment." Church of Lukumi Babalu Aye, 508 U.S. at 534.

"To fail the neutrality prong, it is not enough for a law to simply affect religious practice; the law or the process of its enactment must demonstrate 'hostility' to religion."

We The Patriots, 76 F.4th at 145 (citing Masterpiece Cakeshop, Ltd., 584 U.S. at 634) (emphasis removed).  And "[t]he absence of a religious exception to a law does not, on its own, establish non-neutrality such that a religious exception is constitutionally required." We The Patriots USA, Inc. v. Hochul, 17 F.4th 266, 282 (2d Cir. 2021) ("Hochul") (per curiam), opinion clarified, 17 F.4th 368 (2d Cir. 2021), cert. denied sub nom. Dr. A v. Hochul, 142 S. Ct. 2569 (2022).  "Factors relevant to assessment of governmental neutrality include the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decisionmaking body."  Masterpiece Cakeshop, Ltd., 584 U.S. at 639 (citing Church of Lukumi Babalu Aye, 508 U.S. at 540) (internal quotation marks omitted).

Here, SB 277 is facially neutral.  SB 277 does not make any reference to religion or "a religious practice without a secular meaning discernable from the language or context." Church of Lukumi Babalu Aye, 508 U.S. at 533.  Rather, SB 277 requires all children in public and private schools and child care facilities to receive common childhood vaccinations, exempting those enrolled in a home-based private school or IEP, or those who have a medical condition such that immunization is not considered safe.  See Cal. Health & Saf. Code §§ 120335(f), 120335(h), 120370(a).  Thus, on its face, SB 277 does not target religion or "single out [religion] for especially harsh treatment." Roman Catholic Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63, 66 (2020) (per curiam).

Nevertheless, Plaintiffs argue that SB 277 lacks operational neutrality because its introduction and passage were allegedly motivated by religious animus.  Specifically, Plaintiffs allege that several legislators, including the author of SB 277, Dr. Richard Pan, have made discriminatory remarks about individuals who have sincerely held religious objections to vaccines.  (Compl. ¶¶ 42–45.)  Plaintiffs further allege that Maral Farsi, Deputy Director of Legislative and Inter-Governmental Affairs, has made statements that "diminish the sincerely held religious beliefs of parents across California." (Id. ¶¶ 44–45.) Defendant contends that Plaintiffs fail to allege any facts to show when these alleged

discriminatory remarks were made and how these remarks impacted the introduction and passage of SB 277 such that SB 277 or the process of its enactment demonstrates hostility to religion. (Doc. No. 7 at 9–10.) Moreover, Defendant argues in the reply that both the proffered statement made by Dr. Pan and Deputy Director Farsi's appointment occurred well after the passage of SB 277. (Id. at 9 n.2.) And Plaintiffs fail to identify any other individuals beyond Dr. Pan and Deputy Director Farsi to support their allegation that several legislators have made discriminatory remarks about individuals who have sincerely held religious objections to vaccines.[3] (See Compl. ¶¶ 42–45.)

According to the legislative history, SB 277 was introduced in response to the 2015 measles outbreak in California and reports from the Centers for Disease Control ("CDC") that there were more measles outbreaks in January 2015 in the United States than in any one month in the twenty years prior.[4] (Doc. No. 4-3 at 13, 27 ("Measles has spread through California and the United States, in large part, because of communities with large numbers of unvaccinated people.").) SB 277's legislative history also identified concerns over the significant rise in personal belief exemptions—a 337% increase between 2000 and 2012—which places communities at risk of preventable diseases. Id. Thus, in enacting

---

[3]   Plaintiffs have not had the opportunity to supplement the record or otherwise address these arguments given that Defendant first raised these arguments on reply. The Court permits leave to amend so that Plaintiffs have an opportunity to allege additional facts in support of their arguments and complete the record.

[4]   Defendant requests that the Court take judicial notice of various exhibits relating to SB 277's legislative history. (Doc. No. 4-2 at 2–5.) In Plaintiffs' opposition, Plaintiffs state that Defendant's requests for judicial notice of SB 277's legislative history is unnecessary at this stage given that the meaning of SB 277 is not in dispute. (Doc. No. 6 at 12.) But Plaintiffs allege that SB 277's introduction and passage was motivated by religious animus, thus placing SB 277's legislative history directly at issue. The Court grants Defendant's request for judicial notice as it relates to SB 277's legislative history. See We The Patriots, 76 F.4th at 136 ("In addition to the facts alleged in the complaint, 'as a fundamental matter, courts may take judicial notice of legislative history.'" (citation omitted)). Furthermore, the Court denies the parties' remaining requests for judicial notice as moot as the Court does not reference or cite to the remaining documents at issue in the parties' requests for judicial notice. (See Doc. Nos. 4-2, 6-1.)

SB 277, the California Legislature expressed its intent to provide "a means for the eventual achievement of total immunization of appropriate age groups" against the ten specified infectious diseases in Sections 120325 and 120335. See Cal. Health & Saf. Code §§ 120325(a), 120335(b). In doing so, the California Legislature made clear that "protecting the individual and the community from communicable diseases . . . is a core function of public health." (Doc. No. 4-3 at 51.) Neither SB 277's repeal of California's prior personal belief exemption nor the process of its enactment demonstrates hostility to religion. See Masterpiece Cakeshop, Ltd., 584 U.S. at 634. Accordingly, SB 277 is a neutral law.

### B. General Applicability

The Court now turns to whether SB 277 is generally applicable. For a law to be generally applicable, it may not selectively "impose burdens only on conduct motivated by religious belief." See Church of Lukumi Babalu Aye, 508 U.S. at 543. The Supreme Court has explained that a law is not generally applicable in the following circumstances: (1) where "it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions"; and (2) where it "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." Fulton, 593 U.S. at 533–34 (citations and internal quotation marks omitted). However, "[t]he mere existence of an exemption procedure, absent any showing that secularly motivated conduct could be impermissibly favored over religiously motivated conduct, is not enough to render a law not generally applicable." Hochul, 17 F.4th at 288–89 (citing Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch, 510 F.3d 253, 276 (3d Cir. 2007)) (internal quotation marks omitted).

#### 1. Individualized Exemptions

"All laws are selective to some extent, but categories of selection are of paramount concern when a law has the incidental effect of burdening religious practice." Church of the Lukumi Babalu Aye, 508 U.S. at 542. Typically, the use of amorphous standards, such as "good cause," to administer exemptions or the conferral of wide latitude to government

officials to grant or deny exemptions precludes a finding of general applicability.  See, e.g., Smith, 494 U.S. at 878–82; Fulton, 593 U.S. at 533–34.  Conversely, a law that administers exemptions only to objectively defined categories of persons is generally applicable.  See Stormans, 794 F.3d at 1081–82; Hochul, 17 F.4th at 288–89.

Plaintiffs allege that SB 277 is not generally applicable because it provides "a mechanism for individualized exemptions" by permitting discretionary medical exemptions.  (Doc. No. 6 at 18.)  But SB 277 does not give state officials discretion to decide whether a particular individual's reasons for requesting a medical exemption are meritorious.  See Fulton, 593 U.S. at 533–34.  Rather, the medical exemptions SB 277 provides are framed in objective terms:  A child "shall be exempt" if the parent files with the governing authority a written statement by a licensed physician "to the effect that the physical condition of the child is such, or medical circumstances relating to the child are such, that immunization is not considered safe."  Cal. Health & Saf. Code § 120370(a) (West 2016), current Cal. Health & Saf. Code §120370(a)(1)–(2).  Where a law "provides for an objectively defined category of people to whom the vaccination requirement does not apply, including a category defined by medical providers' use of their professional judgment, such an exemption affords no meaningful discretion to the State."  We The Patriots, 76 F.4th at 151 (citations and internal quotation marks omitted); see also Doe v. Bolton, 410 U.S. 179, 199 (1973) ("If a physician is licensed by the State, he is recognized by the State as capable of exercising acceptable clinical judgment.").  As such, SB 277 does not provide "a mechanism for individualized exemptions."  Fulton, 592 U.S. at 533 (citing Smith, 494 U.S. at 884).

### 2. Comparable Secular Activity

A law is also not generally applicable if it is substantially underinclusive such that it "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way."  Fulton, 592 U.S. at 534 (citations omitted).  The Supreme Court, through a series of decisions regarding limitations on the operations of houses of worship during the COVID-19 pandemic, clarified how courts

should determine whether a law is generally applicable. Specifically, the Court held that regulations "are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat any comparable secular activity more favorably than religious exercise." Tandon, 593 U.S. at 62 (citing Roman Catholic Diocese, 141 S. Ct. at 67–68) (emphasis removed). The Court further held that "whether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue," and "[c]omparability is concerned with the risks various activities pose." Id. (citing Roman Catholic Diocese, 141 S. Ct. at 66–67).

Defendant asserts that California's interest in SB 277 is to protect the health and safety of students and the public at large from the spread of infectious diseases. (See Doc. No. 4-1 at 23–27.) Defendant further argues that personal belief exemptions are not comparable to the enumerated exemptions under SB 277. (See id.; Doc. No. 7 at 11–13.)

Plaintiffs do not dispute California's interest in protecting the health and safety of the public. (Doc. No. 6 at 22.) Rather, Plaintiffs argue that SB 277 is not generally applicable because it treats secular activity more favorably than religious exercise by precluding exemptions for religious adherents but permitting exemptions for immigrant and homeless children, students with medical exemptions, and students enrolled in an IEP or independent student program. (Id. at 19–21; Compl. ¶¶ 33–36.) Plaintiffs further allege that SB 277 is not congruent with California's interests because at this stage, "California cannot demonstrate that religiously exempt students pose a greater risk than secularly exempt students." (Doc. No. 6 at 21; Compl. ¶ 54.) Plaintiffs rely heavily on Roman Catholic Diocese and Tandon in advancing these arguments. (See Doc. No. 6 at 19.)

Here, when considering "the risks that the various activities pose," see Tandon, 593 U.S. at 62, personal belief exemptions are not comparable to the enumerated exemptions under SB 277. As an initial matter, Plaintiffs incorrectly characterize the conditional admission of immigrant and homeless children as an exemption under SB 277. Rather than exempting all immigrant and homeless children, California law allows for the conditional

admission of specified categories of children, including children who are homeless and in "migrant" status, pending the school district or child obtaining proof of vaccination status or otherwise completing the required vaccinations. See Cal. Edu. Code §§ 48204.7, 48850, 48852.7, 49069.5, 49701; Cal. Health & Saf. Code §§ 120340, 120341. Thus, the conditional admission of such children does "not raise a serious question concerning the mandate's general applicability." Doe v. San Diego Unified Sch. Dist., 19 F.4th at 1179 (allowing conditional enrollment of students who are homeless, in "migrant" status, in foster care, or in military families for school district's mandatory COVID-19 vaccination requirement because "conditionally enrolled students are simply given a grace period to provide documentation proving that they have been vaccinated[,] . . . they are not exempt from the vaccination requirement itself").[5]

Next, medical exemptions based on medically contraindicated conditions "serve[] the primary interest for imposing the mandate—protecting student 'health and safety'—and so does not undermine the [State's] interests as a [personal belief exemption] would." Id. at 1178 (citing Fulton, 592 U.S. at 534); see also We The Patriots, 76 F.4th at 153 (medical exemptions did not undermine the state's interest because they "allow[] the small proportion of students who cannot be vaccinated for medical reasons to avoid the harms that taking a particular vaccine would inflict on them"); Hochul, 17 F.4th at 282, 285, 289–90 (medical exemption from healthcare worker COVID-19 vaccination mandate differed from religious exemption in that mandating the vaccination of people with medical contraindications or precautions "would not effectively advance" the government's interest in "protecting the health" of such individuals); Does 1-6 v. Mills, 16 F.4th 20, 30–31 (1st Cir. 2021) (exempting from vaccination those whose health would be endangered by vaccination did not undermine state's interest in requiring COVID-19 vaccination for

---

[5] Should Plaintiffs have additional facts showing that the conditional admission of students who are homeless, in "migrant" status, in foster care, or in military families treats secular activity more favorably than religious exercise, Plaintiffs should allege those additional facts in their amended complaint.

healthcare workers). Additionally, medical exemptions may be "limited in duration," whereas personal belief exemptions would apply to the student's entire education. See Doe v. San Diego Unified Sch. Dist., 19 F.4th at 1178 (quoting Hochul, 17 F.4th at 286).

Furthermore, federal law requires the implementation of IEPs. See 20 U.S.C. § 1415(j); see also Doe v. San Diego Unified Sch. Dist., 19 F.4th at 1179–80 ("[O]nce an IEP is in place, the Individuals with Disabilities Education Act requires [the State] to implement the IEP. The IEP cannot be changed unilaterally; it may be adjusted only through a process that provides the student with certain procedural protections. Until that process is complete, the IEP 'shall remain' in effect." (citing 20 U.S.C. § 1415(j))). California is thus required to accommodate access to federally mandated IEP services. Doe v. San Diego Unified Sch. Dist., 19 F.4th at 1179. Accordingly, in-person attendance by unvaccinated students with an IEP is not comparable to in-person attendance by students with personal belief objections to vaccination. See id.

Lastly, students enrolled in a home-based private school or an independent study program without classroom instruction do not inherently pose the same level of risk as students with personal belief exemptions who would be granted full access to traditional classroom settings. See Miller v. McDonald, No. 1:23-cv-00484-EAW, 2024 WL 1040777, at *15 (W.D.N.Y. Mar. 11, 2024) (holding that the remaining alleged comparable secular activities, which include unvaccinated homeschooled children, do not render New York's statute generally applicable) (citing We The Patriots, 17 F.4th at 156).

In considering California's interest in the health and safety of students and the public at large, the risk posed by SB 277's enumerated exemptions does not qualify as comparable to the risk posed by a personal belief exemption. See Doe v. San Diego Unified Sch. Dist., 19 F.4th at 1180. Accordingly, SB 277 is generally applicable.

**C.   Rational Basis Review**

Because SB 277 is neutral and generally applicable, rational basis review applies. See Stormans, 794 F.3d at 1084. "Rational basis review is highly deferential to the government, allowing any conceivable rational basis to suffice." Erotic Serv. Provider

Legal Educ. & Research Project v. Gascon, 880 F.3d 450, 457 (9th Cir.), amended, 881 F.3d 792 (9th Cir. 2018) (citation omitted).  Rational basis review requires a two-step analysis: (1) whether the challenged law has a legitimate purpose; and (2) whether it was reasonable for the government to believe the challenged law would promote that purpose. W. & S. Life Ins. Co. v. State Bd. of Equalization of Cal., 451 U.S. 648, 668 (1981) (citations omitted).  Under this test, "[a] statute is presumed constitutional, and the burden is on the one attacking the legislative arrangement to negate every conceivable basis which might support it, whether or not the basis has a foundation in the record." Heller v. Doe by Doe, 509 U.S. 312, 320–21 (internal citations and quotation marks omitted). Furthermore, a "[l]egislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 315 (1993) (citations omitted).  Courts are also "compelled . . . to accept a legislature's generalizations even when there is an imperfect fit between means and ends." Heller, 509 U.S. at 321.

The State has a legitimate interest in protecting the health and safety of students and the public at large.  See Stormans, 794 F.3d at 1084.  Plaintiffs' opposition does not dispute this legitimate public health interest.  (See Doc. No. 6 at 22.)  Moreover, SB 277's repeal of California's prior personal belief exemption is rationally related to the State's interest in protecting the public health of the community given the significant rise in personal belief exemptions in the years leading up to SB 277's enactment, which impacts herd immunity and the prevention of future outbreaks.  (See Doc. No. 4-3 at 13, 27 ("Between 2000 and 2012, the number of Personal Belief Exemptions (PBE) from vaccinations required for school entry that were filed rose by 337%.  In 2000, the PBE rate for Kindergartners entering California schools was under 1%.  However, as of 2012, that number rose to 2.6%. From 2012 to 2014, the number of children entering Kindergarten without receiving some or all of their required vaccinations due to their parent's personal beliefs increased to 3.15%.  In certain pockets of California, exemption rates are as high as 21% which places our communities at risk for preventable diseases.  Given the highly contagious

nature of diseases such as measles, vaccination rates of up to 95% are necessary to preserve herd immunity and prevent future outbreaks.").)

While Plaintiffs do not dispute the State's legitimate interest, Plaintiffs argue in a conclusory fashion that the State has no rational justification for eliminating personal belief exemptions because religiously exempt students pose no greater risk than secularly exempt students. (See Doc. No. 6 at 1, 10, 21.) But the decision to allow medical exemptions and not allow personal belief exemptions does not render SB 277 irrational. Rather, allowing for medical exemptions based on medically contraindicated conditions furthers the State's interest in the health and safety of students. See Doe v. San Diego Unified Sch. Dist., 19 F.4th at 1178. Furthermore, federal law requires the implementation of IEPs. See 20 U.S.C. § 1415(j); see also Doe v. San Diego Unified Sch. Dist., 19 F.4th at 1179. California is thus required to accommodate access to federally mandated IEP services. Moreover, students enrolled in a home-based private school or an independent study program without classroom instruction do not inherently pose the same level of risk as students with personal belief exemptions who would be granted full access to traditional classroom settings. See Miller, 2024 WL 1040777, at *15 (citing We The Patriots, 76 F.4th at 156).

Plaintiffs further allege that SB 277 and its elimination of personal belief exemptions "is not congruent with California's interest in slowing the spread of disease," by asserting that California's vaccination rates were already high when SB 277 was enacted, and personal belief exemption requests were declining. (Doc. No. 6 at 9–10, 19; Compl. ¶¶ 50–53 nn.1–5.) Again, under rational basis review, the "[l]egislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." Beach Commc'ns, 508 U.S. at 315 (citations omitted). According to the legislative history, SB 277 was introduced in response to the 2015 measles outbreak in California and reports from the CDC that there were more measles outbreaks in January 2015 in the United States than in any one month in the twenty years prior. (Doc. No. 4-3 at 13, 27 ("Measles has spread through California and the United States, in large part, because of communities with large numbers of unvaccinated people.").) And

importantly, SB 277's legislative history identified concerns over the significant rise in personal belief exemptions—a 337% increase between 2000 and 2012—which places communities at risk of preventable diseases. Id. Thus, SB 277 is congruent with the State's interest in slowing the spread of infectious diseases.

There is a legitimate State interest in protecting the health and safety of students and the public at large, and SB 277's repeal of California's prior personal belief exemption is rationally related to furthering that interest. Because Plaintiffs fail to allege facts from which an inference can be drawn to hold otherwise, SB 277 survives rational basis review. Accordingly, Plaintiffs' Free Exercise claim fails as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to dismiss and dismisses Plaintiffs' complaint with leave to amend. See Doe v. United States, 58 F.3d at 497 ("A district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts."). Plaintiffs may file an amended complaint within **thirty (30) days** from the date of this order to cure the deficiencies in their complaint if they can do so.

**IT IS SO ORDERED.**

DATED: March 25, 2024

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT