1
2
3
4
5
6
7

8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   SARA ROYCE; SARAH CLARK;            Case No.: 3:23-cv-02012-H-BLM
     TIFFANY BROWN; and KRISTI
12   CARAWAY,                            **ORDER GRANTING DEFENDANT'S**
                                         **MOTION TO DISMISS**
13                       Plaintiffs,     **PLAINTIFFS' THIRD AMENDED**
                                         **COMPLAINT WITHOUT LEAVE**
14   v.                                  **TO AMEND**

15   ERICA PAN, in her official
     capacity as the State Public Health [Doc. No. 50]
16   Officer,

17
                         Defendant.
18

19   / / /

20   / / /

21   / / /

22
23
24
25
26
27
28

                              1
                                                      3:23-cv-02012-H-BLM

On January 10, 2025, Defendant Tomás Aragón (now Defendant Erica Pan), director of the California Department of Public Health ("CDPH"), in his official capacity as State Public Health Officer filed a motion to dismiss Plaintiffs Sara Royce, Sarah Clark, Tiffany Brown, and Kristi Caraway (collectively "Plaintiffs") third amended complaint.[1]  (Doc. No. 50.)  On January 10, 2025, Defendant also filed a request for judicial notice in support of his motion to dismiss.  (Doc. No. 51, Request for Judicial Notice ("RJN").)  On February 10, 2025, Plaintiffs filed a response in opposition to Defendant's motion to dismiss.  (Doc. No. 52.)  On February 14, 2025, Defendant filed a reply.  (Doc. No. 53.)

On March 10, 2025, the Court held a hearing on the matter.  Robert H. Tyler appeared for Plaintiffs.  Darin L. Wessel appeared for Defendant.  For the reasons below, the Court grants Defendant's motion to dismiss Plaintiffs' third amended complaint without leave to amend.

## **BACKGROUND**

The following factual background is taken from the allegations in the operative complaint.  Plaintiffs are four mothers with school-aged children who reside in California.  (Doc. No. 48, TAC ¶¶ 7, 10, 13, 17.)  Plaintiffs allege that their religious beliefs forbid them from vaccinating their children.  (Id. ¶¶ 2, 8, 11, 15, 19.)  Plaintiffs further allege that their children are unable to enjoy the benefits of a public and private education because California's compulsory vaccination law requires all students to receive numerous vaccines to attend public or private school.  (Id. ¶¶ 2, 9, 12, 16, 20.)

---

[1]    Plaintiffs' operative complaint names Tomás Aragón in his capacity as California's State Public Health Officer as the named defendant in this action.  (See Doc. No. 48, TAC.)  On February 1, 2025, Dr. Erica Pan succeeded Aragón as the Director and State Public Health Officer of the California Department of Public Health ("CDPH").  (See Doc. No. 53 at 1 n.1.)  As such, pursuant to Federal Rule of Civil Procedure 25(d), the Court automatically substitutes in Erica Pan in place of Tomás Aragón as the named defendant in this action.  See Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending.  The officer's successor is automatically substituted as a party.  Later proceedings should be in the substituted party's name . . . .").

Under California law, children are required to receive immunization against certain infectious diseases prior to being admitted to any public or private elementary or secondary school, child care center, day nursery, nursery school, family day care home, or development center.  Cal. Health & Saf. Code § 120335(b).  Specifically, children are required to be immunized against the following diseases: (1) diphtheria; (2) hepatitis B; (3) haemophilus influenzae type b; (4) measles; (5) mumps; (6) pertussis (whooping cough); (7) poliomyelitis; (8) rubella; (9) tetanus; (10) varicella (chickenpox); and (11) "[a]ny other disease deemed appropriate" by CDPH.  Cal. Health & Saf. Code §§ 120325(a), 120335(b).

Prior to January 1, 2016, students could apply for medical and personal belief exemptions to the immunization requirement.  See Cal. Stats. ch. 35.  Since January 1, 2016, personal belief exemptions have been prohibited pursuant to California Senate Bill 277 ("SB 277").[2]  Cal. Health & Saf. Code § 120335(g)(1).  Moreover, effective July 1, 2016, school authorities may not unconditionally admit for the first time any child to preschool, kindergarten through sixth grade, or admit any child to seventh grade, unless the child either has been properly immunized, or qualifies for other exemptions recognized by statute.  Cal. Health & Saf. Code § 120335(g)(3).  SB 277 further provides that personal belief exemptions on file at a private or public elementary or secondary school, child day care center, day nursery, nursery school, family day care home, or development center prior to January 1, 2016, would be honored through each of the designated grade spans (i.e., birth to preschool; kindergarten and grades one to six inclusive, including transitional kindergarten; and grades seven to twelve, inclusive), until the unvaccinated child enrolls in the next grade span.  Cal. Health & Saf. Code § 120335(g)(1)-(2).  In enacting SB 277, the California Legislature expressed its intent to

---

[2]    SB 277 was enacted in 2015 and took effect on January 1, 2016.  See Cal. Stats. 2015 ch. 35.  SB 277 amended California Health and Safety Code §§ 120325, 120335, 120370, and 120375, added § 120338, and repealed § 120365.  Id.

provide "a means for the eventual achievement of total immunization of appropriate age groups" against the ten specified infectious diseases in §§ 120325 and 120335. Cal. Health & Saf. Code §§ 120325(a), 120335(b). SB 277 was amended to provide that any immunizations beyond the ten specified in §§ 120325 and 120335 may only be mandated after action by CDPH to add the new immunizations, and only "if exemptions are allowed for both medical reasons and personal beliefs."[3] Cal. Health & Saf. Code § 120338.

There are exceptions to California's immunization requirements. First, children may be medically exempt from the immunization requirements if a licensed physician states in writing that "the physical condition of the child is such, or medical circumstances relating to the child are such, that immunization is not considered safe." Cal. Health & Saf. Code § 120370(a) (West 2016), current Cal. Health & Saf. Code §120370(a)(1)-(2). Second, vaccinations are not required for any child in a home-based private school or a child who is enrolled in an independent study program and does not receive classroom-based instruction. Cal. Health & Saf. Code § 120335(f). Third, children who qualify for an individualized education program ("IEP"), pursuant to federal law and § 56026 of the California Education Code, may not be prohibited from accessing any special education and related services required by their IEP based on vaccination status. Cal. Health & Saf. Code § 120335(h). Fourth, California's immunization requirements do not apply to persons "18 years of age or older." Cal. Health & Saf. Code § 120360. Finally, California law also allows conditional admission for students who are homeless, in "migrant" status, in foster care, or in military families, pending receipt of the students' vaccination records. See Cal. Educ. Code §§ 48204.7, 48850, 48852.7, 49069.5, 49701; Cal. Health & Saf. Code §§ 120340, 120341.

On October 31, 2023, Plaintiffs filed a complaint against Defendant Rob Bonta, in

---

[3] This case is not about emergency use COVID-19 vaccines. Rather, this case is about immunization against the ten childhood diseases specified in §§ 120325 and 120335. See Cal. Health & Saf. Code §§ 120325(a), 120335(b).

his official capacity as Attorney General of California, alleging a single claim pursuant to 42 U.S.C. § 1983 for violation of the Free Exercise Clause of the United State Constitution. (Doc. No. 1, Compl. ¶¶ 57-74.)  On November 29, 2023, Defendant Bonta filed a motion to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  (Doc. No. 4.)  On March 25, 2024, the Court granted Defendant Bonta's motion to dismiss with leave to amend.  (Doc. No. 15.)

Plaintiffs filed a first amended complaint on April 29, 2024, (Doc. No. 18, FAC), and a second amended complaint on July 25, 2024, (Doc. No. 32, SAC).  Plaintiffs' second amended complaint added Defendant Aragón.  (Doc. No. 32, SAC ¶ 22.)  On August 23, 2024, Defendants Bonta and Aragón filed a motion to dismiss the second amended complaint. (Doc. No. 36.)  On November 4, 2024, the Court granted Plaintiffs leave to file a third amended complaint and dismissed Defendant Bonta from the action on immunity grounds.  (Doc. No. 43.)

On July 25, 2024, Plaintiffs filed a third amended complaint for injunctive and declaratory relief against Defendant Aragón (now Defendant Pan), alleging a single claim pursuant to 42 U.S.C. § 1983 challenging the constitutionality of SB 277 under the Free Exercise Clause of the First Amendment.  (Doc. No. 48, TAC ¶¶ 149-73.)  By the present motion, Defendant moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' third amended complaint in its entirety with prejudice for failure to state a claim upon which relief can be granted.  (Doc. No. 50.)

## DISCUSSION

### I.    Legal Standards for a Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted.  See Conservation Force v. Salazar, 646 F.3d 1240, 1241 (9th Cir. 2011) (citing Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001)).  Federal Rule of Civil Procedure 8(a)(2) requires that a pleading that states a claim

3:23-cv-02012-H-BLM

for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The function of this pleading requirement is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Id. (quoting Twombly, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Id. at 679.  Accordingly, dismissal for failure to state a claim is proper where the claim "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008); see Los Angeles Lakers, Inc. v. Fed. Ins. Co., 869 F.3d 795, 800 (9th Cir. 2017).

In reviewing a Rule 12(b)(6) motion to dismiss, a district court must "'accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff.'"  Los Angeles Lakers, 869 F.3d at 800 (quoting AE ex rel. Hernandez v. Cty. of Tulare, 666 F.3d 631, 636 (9th Cir. 2012)).  But a court need not accept "legal conclusions" as true.  Iqbal, 556 U.S. at 678.  "Further, it is improper for a court to assume the claimant "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged."  Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

In addition, a court may consider documents incorporated into the complaint by reference and items that are proper subjects of judicial notice.  See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010).  If the court dismisses a complaint for

failure to state a claim, it must then determine whether to grant leave to amend. <u>See Doe v. United States</u>, 58 F.3d 494, 497 (9th Cir. 1995); <u>Telesaurus VPC, LLC v. Power</u>, 623 F.3d 998, 1003 (9th Cir. 2010).

## II.    Plaintiffs' Free Exercise Claim

In the operative complaint, Plaintiffs allege a single claim against Defendant pursuant to 42 U.S.C. § 1983 for violation of the Free Exercise Clause of the United State Constitution. (Doc. No. 48, TAC ¶¶ 149-73.) Defendant argues that this claim should be dismissed because Plaintiffs fail to state a cognizable Free Exercise Clause claim as a matter of law.[4] (Doc. No. 50-1 at 11-25; Doc. No. 53 at 3-10.)

### A.    Legal Standards

The Free Exercise Clause of the First Amendment, as incorporated to the states through the Fourteenth Amendment, provides that "Congress shall make no law respecting

---

[4] In addition to arguing that Plaintiffs have failed to state a cognizable Free Exercise claim, Defendant also argues that Plaintiffs lack Article III standing to bring their Free Exercise claim. (Doc. No. 501- at 10-11; Doc. No. 53 at 2-3.) To establish Article III standing, "a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." <u>Food & Drug Admin. v. All. for Hippocratic Med.</u>, 602 U.S. 367, 380 (2024). "An injury in fact must be 'concrete,' meaning that it must be real and not abstract." <u>Id.</u> at 381. "The injury also must be particularized; the injury must affect 'the plaintiff in a personal and individual way' and not be a generalized grievance." <u>Id.</u>

Defendant contends that Plaintiffs' "allegations of a 'desire' to send their children to public school" is insufficient to satisfy the injury in fact requirement for Article III standing. (Doc. No. 50-1 at 11; <u>see</u> Doc. No. 53 at 2.) The Court rejects Defendant's contention. Plaintiffs' allegations that they wish to send their children to public or private schools but are unable to do so based on the interplay between their religious beliefs and California's mandatory immunization requirements, (<u>see</u> Doc. No. 48, TAC ¶¶ 7-20), is sufficient to satisfy the injury in fact requirement for Article III standing. <u>See, e.g.</u>, <u>Klaassen v. Trustees of Indiana Univ.</u>, 549 F. Supp. 3d 836, 858 (N.D. Ind. 2021), <u>vacated and remanded on other grounds</u>, 24 F.4th 638 (7th Cir. 2022) (finding student had Article III standing to challenge University's vaccine mandate); <u>see also, e.g.</u>, <u>Stormans, Inc. v. Selecky</u>, 586 F.3d 1109, 1121 (9th Cir. 2009) (finding pharmacists had Article III standing to bring Free Exercise claims).

an establishment of religion, or prohibiting the free exercise thereof." U.S. Const., amend. I; <u>Cantwell v. Connecticut</u>, 310 U.S. 296, 303-04 (1940). To merit protection under the Free Exercise Clause, a religious claim must be "sincerely held" and "rooted in religious belief, not in 'purely secular' philosophical concerns." <u>Malik v. Brown</u>, 16 F.3d 330, 333 (9th Cir. 1994) (quoting <u>Callahan v. Woods</u>, 658 F.2d 679, 683 (1981)); <u>accord</u> <u>Al Saud v. Days</u>, 50 F.4th 705, 714 (9th Cir. 2022). Moreover, religious beliefs "'need not be acceptable, logical, consistent, or comprehensible to others'" in order to be protected under the Free Exercise Clause. <u>Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.</u>, 508 U.S. 520, 531 (1993) (quoting <u>Thomas v. Review Bd. of Indiana Emp't Sec. Div.</u>, 450 U.S. 707, 714 (1981)).

"The Supreme Court has held that 'the right of free exercise does not relieve an individual of the obligation to comply with a "valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that [his or her] religion prescribes (or proscribes)."'" <u>Doe v. San Diego Unified Sch. Dist.</u>, 19 F.4th 1173, 1177 (9th Cir. 2021) (quoting <u>Emp't Div. v. Smith</u>, 494 U.S. 872, 879 (1990)); <u>accord</u> <u>Stormans, Inc. v. Wiesman</u>, 794 F.3d 1064, 1075 (9th Cir. 2015). A neutral law of general applicability is subject to rational basis review, "even if the law has the incidental effect of burdening a particular religious practice."[5] <u>Church of Lukumi Babalu Aye</u>, 508 U.S. at 531 (citing <u>Smith</u>, 494 U.S. at 879); <u>see</u> <u>Stormans</u>, 794 F.3d at 1084. Under rational basis review, the challenged law is presumed to be valid and must be upheld if it is "rationally related to a legitimate governmental purpose." <u>Stormans</u>, 794 F.3d at 1084. A law that is not neutral and generally applicable is subject to strict scrutiny. <u>Id.</u> at 1076. "[S]trict

---

[5]    In their briefing, Plaintiffs assert that there has been a "seismic shift" in Free Exercise Clause jurisprudence. (<u>See</u> Doc. No. 52 at 7-13 (citing <u>Calvary Chapel Dayton Valley v. Sisolak</u>, 982 F.3d 1228, 1232 (9th Cir. 2020)).) Nevertheless, Plaintiffs concede that the Supreme Court has not overturned <u>Smith</u>'s "neutral and generally applicable" test for Free Exercise claims. (<u>Id.</u> at 9.) <u>See also</u> <u>Fulton v. City of Philadelphia</u>, 593 U.S. 522, 533 (2021) (declining to revisit <u>Smith</u>).

scrutiny requires the State to further 'interests of the highest order' by means 'narrowly tailored in pursuit of those interests.'" Tandon v. Newsom, 593 U.S. 61, 64-65 (2021) (citing Church of Lukumi Babalu Aye, 508 U.S. at 546).

The Supreme Court has long endorsed state and local government authority to impose mandatory student vaccinations in order to protect the health and safety of other students and the public at large. See Jacobson v. Commonwealth of Massachusetts, 197 U.S. 11 (1905); Zucht v. King, 260 U.S. 174, 175-77 (1922) ("[I]t is within the police power of a state to provide for compulsory vaccination."); Prince v. Massachusetts, 321 U.S. 158, 166-67 (1944) ("The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death."). Federal courts, including courts within this circuit, have routinely analyzed mandatory vaccination cases under rational basis review and have regularly rejected Free Exercise challenges to mandatory vaccination laws. See, e.g., Miller v. McDonald, No. 24-681, ___ F.4th ___, 2025 WL 665102, at *8 (2d Cir. Mar. 3, 2025); We The Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev., 76 F.4th 130, 156 (2d Cir. 2023), cert. denied 144 S. Ct. 2682 (2024); We The Patriots USA, Inc. v. Hochul, 17 F.4th 266, 290 (2d Cir.) ("Hochul") (per curiam), opinion clarified, 17 F.4th 368 (2d Cir. 2021), cert. denied sub nom. Dr. A v. Hochul, 142 S. Ct. 2569 (2022); Doe, 19 F.4th at 1177–80; Whitlow v. California, 203 F. Supp. 3d 1079, 1086–87 (S.D. Cal. 2016) (denying motion for preliminary injunction against SB 277 and concluding no likelihood of success on the merits for a Free Exercise claim). Courts have also consistently held that religious exemptions to vaccine mandates go beyond what the Constitution requires. See, e.g., Phillips v. City of New York, 775 F.3d 538, 543 (2d Cir. 2015); Whitlow, 203 F. Supp. 3d at 1084 ("[I]t is clear that the Constitution does not require the provision of a religious exemption to vaccination requirements, much less a [personal belief exemption].").

**B.    Analysis**

Defendant argues that Plaintiffs' Free Exercise claim should be dismissed because SB 277's repeal of California's prior personal belief exemption in 2016 does not violate

the Free Exercise Clause of the First Amendment as SB 277 is a neutral law of general applicability and survives rational basis review. (Doc. No. 50-1 at 14-24; Doc. No. 53 at 3-10.) Defendant further argues that even if the Court were to apply strict scrutiny, SB 277 would still survive. (Doc. No 50-1 at 24-25; Doc. No. 53 at 10.) In response, Plaintiffs argue that SB 277 is not a neutral law of general applicability and fails strict scrutiny or rational basis review. (Doc. No. 52 at 14-25.)

### 1.    SB 277 is Neutral

Plaintiffs contend that SB 277 is not neutral toward religion. (Doc. No. 52 at 20-22.) "A government policy is neutral if it does not 'restrict[] practices because of their religious nature' or evince 'intoleran[ce] of religious beliefs.'" Spivack v. City of Philadelphia, 109 F.4th 158, 167 (3d Cir. 2024) (quoting Fulton, 593 U.S. at 533); see Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rights Comm'n, 584 U.S. 617, 636–39 (2018)).

A law may fail the neutrality prong either facially or operationally. See Church of Lukumi Babalu Aye, 508 U.S. at 533-40. "A law lacks facial neutrality if it refers to a religious practice without secular meaning discernable from the language or context." Stormans, 794 F.3d at 1076 (quoting Church of Lukumi Babalu Aye, 508 U.S. at 533); see, e.g., Loffman v. Cal. Dep't of Educ., 119 F. 4th 1147, 1166–67 (9th Cir. 2024) (California law requiring that certain schools with state contracts be "nonsectarian" failed neutrality test). A law lacks operational neutrality if, despite being facially neutral, it operates in such a way that it "impermissibly attempt[s] to target religious practices through careful legislative drafting." Stormans, 794 F.3d at 1076 (quoting Church of Lukumi Babalu Aye, 508 U.S. at 535–37). That is, despite not referencing religion, the law is designed to target "religious conduct for distinctive treatment." Church of Lukumi Babalu Aye, 508 U.S. at 534.

"To fail the neutrality prong, it is not enough for a law to simply *affect* religious practice; the law or the process of its enactment must demonstrate 'hostility' to religion." We The Patriots, 76 F.4th at 145 (emphasis in original) (citing Masterpiece Cakeshop, 584 U.S. at 634); accord Miller, 2025 WL 665102, at *4. And "[t]he absence of a religious

3:23-cv-02012-H-BLM

exception to a law does not, on its own, establish non-neutrality such that a religious exception is constitutionally required." Hochul, 17 F.4th at 282. "Factors relevant to assessment of governmental neutrality include the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decisionmaking body." Masterpiece Cakeshop, 584 U.S. at 639 (citing Church of Lukumi Babalu Aye, 508 U.S. at 540) (internal quotation marks omitted).

SB 277 is facially neutral. SB 277 does not make any reference to religion or "a religious practice without a secular meaning discernable from the language or context." Church of Lukumi Babalu Aye, 508 U.S. at 533. Rather, SB 277 requires all children under 18 years of age in public and private schools and childcare facilities to receive common childhood vaccinations, exempting those enrolled in a home-based private school, non-classroom based independent study, or IEP, or those who have a medical condition such that immunization is not considered safe. See Cal. Health & Saf. Code §§ 120335(f), 120335(h), 120370(a). Thus, on its face, SB 277 does not target any religion or religious practice or "single out" any religion or religious practice "for especially harsh treatment." Roman Catholic Diocese of Brooklyn v. Cuomo, 592 U.S. 14, 17 (2020) (per curiam).

The Court next considers SB 277's legislative history. SB 277 was introduced in response to the 2015 measles outbreak in California and reports from the Centers for Disease Control ("CDC") that there were more measles outbreaks in January 2015 in the United States than in any one month in the twenty years prior.[6] (Doc. No. 51-1, RJN, Ex.

---

[6]   Defendant requests that the Court take judicial notice of various exhibits relating to SB 277's legislative history. (Doc. No. 51, RJN.) Plaintiffs do not oppose Defendant's request. The Court grants Defendant's request for judicial notice as it relates to SB 277's legislative history. See We The Patriots, 76 F.4th at 136 ("In addition to the facts alleged in the complaint, 'as a fundamental matter, courts may take judicial notice of legislative history.'" (quoting Goe v. Zucker, 43 F.4th 19, 29 (2d Cir. 2022))); see, e.g., Aramark Facility Servs. v. Serv. Emps. Int'l Union, Loc. 1877, AFL CIO, 530 F.3d 817, 826 n.4

4 at 2, Ex. 5 at 5 ("Measles has spread through California and the United States, in large part, because of communities with large numbers of unvaccinated people.").)  Documents in SB 277's legislative history also identify concerns over the significant rise in personal belief exemptions – a 337% increase between 2000 and 2012 – which placed communities at risk of preventable diseases.  Id.  Thus, in enacting SB 277, the California Legislature expressed its intent to provide "a means for the eventual achievement of total immunization of appropriate age groups" against the ten specified infectious diseases in §§ 120325 and 120335.  See Cal. Health & Saf. Code §§ 120325(a), 120335(b).  In doing so, the California Legislature made clear that "protecting the individual and the community from communicable diseases . . . is a core function of public health." (Doc. No. 51-1, RJ, Ex. 7 at 7.)  The legislative history of SB 277 as summarized above demonstrates no hostility toward any religion or religious practice.

Plaintiffs acknowledge that the legislature's intent for SB 277 was to prevent the transmission of disease and protect student health and public health, (see Doc. No. 48, TAC ¶ 36; Doc. No. 52 at 14, 21), but they argue that the process of SB 277's enactment nonetheless demonstrates hostility to religion.  Specifically, Plaintiffs allege that several legislators have made discriminatory remarks about individuals who have sincerely held religious objections to vaccines. (Doc. No. 48, TAC ¶¶ 66-68.)  They allege that the author of SB 277, Dr. Richard Pan, stated on social media that people who "'opt out of vaccines should be opted out of American society'" and equated them "to drunk drivers." (Id. ¶ 67.)  Plaintiffs further allege that Maral Farsi, Deputy Director of Legislative and Inter-Governmental Affairs, has stated that "anti-vaxxer parents" are "'oxygen thieves who don't care about children.'" (Id. ¶ 68.)  Plaintiffs contend that these statements "demonstrate animus towards individuals who oppose vaccinations on religious grounds." (Doc. No. 52

---

(9th Cir. 2008) (granting requests for judicial notice of legislative materials); Chaker v. Crogan, 428 F.3d 1215, 1223 n.8 (9th Cir. 2005) (granting request to take judicial notice of legislative history of state statute).

at 21.)   But, to the contrary, as Defendant correctly notes, the alleged statements say nothing about religion or religious beliefs; rather, the statements reference "people who opt out of vaccines" and "anti-vaxxer parents" generally.   See, e.g., Tingley v. Ferguson, 47 F.4th 1055, 1086 (9th Cir. 2022) (finding state senator's comments did not show a hostility towards religion where the comments were directed towards specific modes of treatment utilized during conversion therapy and not towards any religious beliefs).   And in any event, as Defendant highlights and Plaintiffs seem to concede, these statements were made well after SB 277 was passed.   (Doc. No. 50-1 at 18; Doc. No. 52 at 21.)   Plaintiffs have not sufficiently explained how, despite post-dating SB 277's enactment, these statements nonetheless show that its enactment demonstrates hostility to religion.   See also Miller, 2025 WL 665102, at *5 ("Plaintiffs have not alleged facts to suggest that those remarks infected 'a sizeable portion" of legislators' votes or otherwise influenced the law's enactment. . . . [T]he motives of a small number of legislators cannot be attributed to the legislative body as a whole."); Tingley, 47 F.4th at 1087 ("Stray remarks of individual legislators are among the weakest evidence of legislative intent.").   As such, Plaintiffs' allegations fail to demonstrate that SB277's legislative history exhibited any hostility towards religion.

   Plaintiffs also allege that by passing SB 277, "[t]he state targeted religion because it expressly eliminated religious exemptions."   (Doc. No. 48, TAC ¶ 70.)   There are two problems with this contention.   First, SB 277 did not specifically repeal a religious exemption.   Rather, it repealed a general personal belief exemption that was secular and neutral on its face.   Repeal of a secular exemption does not demonstrate hostility towards any religion or religious practice.   Second, even if SB 277 could be characterized as repealing a religious exemption, repealing a prior religious exemption is not hostile towards religion per se.   In We The Patriots, the Second Circuit declined to hold that repealing an existing religious exemption is in and of itself hostile to religion, and provided persuasive reasons for its decision, including that adopting such a rule "would disincentivize States from accommodating religious practice in the first place."   76 F.4th at 149–50.

For the reasons above, neither SB 277's repeal of California's prior personal belief exemption nor the process of its enactment demonstrates hostility to religion. See Masterpiece Cakeshop, 584 U.S. at 634. Accordingly, SB 277 is a neutral law.

### 2. SB 277 is Generally Applicable

Plaintiffs argue that SB 277 is not generally applicable because it eliminates exemptions for religious reasons but leaves intact exemptions for secular ones. (Doc. No. 52 at 14-20.) For a law to be generally applicable, it may not selectively "impose burdens only on conduct motivated by religious belief." See Church of Lukumi Babalu Aye, 508 U.S. at 543. The Supreme Court has explained that a law is not generally applicable when: (1) it "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way;" or (2) it "invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions." Fulton, 593 U.S. at 533–34; accord Spivack, 109 F.4th at 167; We The Patriots, 76 F.4th at 145. But "[t]he mere existence of an exemption procedure, absent any showing that secularly motivated conduct could be impermissibly favored over religiously motivated conduct, is not enough to render a law not generally applicable." Hochul, 17 F.4th at 288–89 (quoting Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch, 510 F.3d 253, 276 (3d Cir. 2007)) (internal quotation marks omitted).

The Supreme Court, through a series of decisions regarding limitations on the operations of houses of worship during the COVID-19 pandemic, clarified how courts should determine whether a law is generally applicable. Specifically, the Supreme Court held that regulations "are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise." Tandon, 593 U.S. at 62 (citing Roman Catholic Diocese, 141 S. Ct. at 67–68). The Court further held that "whether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue," and "[c]omparability is concerned with the risks various activities pose." Id. (citing Roman Catholic Diocese, 141

S. Ct. at 66, 67).

Defendant asserts that California's interest in SB 277 is to protect the health and safety of students and the public at large from the spread of infectious diseases.  (See Doc. No. 50-1 at 16-17.)  Plaintiffs do not dispute California's interest in protecting the health and safety of the public.  (Doc. No. 52 at 14.)  Rather, Plaintiffs argue that SB 277 is substantially underinclusive and treats secular activity more favorably than religious exercise by eliminating exemptions for religious reasons but permitting secular exemptions that undermine the State's interest in a similar way.  (See id. at 14–20.)  In particular, Plaintiffs highlight medical exemptions, exemptions for home schooled children and children enrolled in independent student programs, exemptions for students who qualify for IEPs, exemptions for students over 18 years of age, and conditional enrollment for migrant, homeless, foster, and military children.  (See id.; Doc. No. 48, TAC ¶¶ 41-58.)  The Court addresses each of these exemptions at issue in turn below.

### i.    Medical Exemptions Are Not Comparable to a Religious Exemption

Children may be medically exempt from California's immunization requirements if a licensed physician states in writing that "the physical condition of the child is such, or medical circumstances relating to the child are such, that immunization is not considered safe."  Cal. Health & Saf. Code § 120370(a) (West 2016), current Cal. Health & Saf. Code § 120370(a)(1)-(2).  Plaintiffs argue that § 120370's medical exemption is comparable to a religious exemption because they both undermine California's asserted interest in SB 277 – protecting the health and safety of students and the public at large from the spread of infectious diseases – in the same kind of way. (Doc. No. 52 at 16.)  Specifically, they argue that the two types of exemptions both "increase[] the likelihood that the student who is exempted will become infected and that a disease will spread in the community."  (Id.)

But Plaintiffs acknowledge that Defendant has an interest in protecting public health and safety.  (See id. at 14.)  And a medical exemption based on medically contraindicated conditions serve that interest.  In a case involving a similar medical exemption to a vaccine

mandate, the Ninth Circuit in <u>Doe</u> explained that the medical exemption at issue "serves the primary interest for imposing the mandate—protecting student 'health and safety'—and so does not undermine the [State's] interests as a religious exemption would." 19 F.4th at 1178 (citing Fulton, 593 U.S. at 534); <u>see also, e.g.</u>, <u>Spivack</u>, 109 F.4th at 176 ("Unlike a religious exemption, a medical exemption furthers the [government]'s interest in keeping its employees safe and healthy by allowing employees for whom the COVID-19 vaccine would cause death or illness to abstain from vaccination."); <u>We The Patriots</u>, 76 F.4th at 153 ("Allowing students for whom vaccination is medically contraindicated to avoid vaccination while requiring students with religious objections to be vaccinated does, in both instances, advance the State's interest in promoting health and safety."); <u>Hochul</u>, 17 F.4th at 282, 285, 289–90 (medical exemption from healthcare worker COVID-19 vaccination mandate differed from religious exemption in that mandating the vaccination of people with medical contraindications or precautions "would not effectively advance" the government's interest in "protecting the health" of such individuals); <u>Does 1-6 v. Mills</u>, 16 F.4th 20, 30–31 (1st Cir. 2021) (exempting from vaccination those whose health would be endangered by vaccination did not undermine state's interest in requiring COVID-19 vaccination for healthcare workers).  As such, § 120370's medical exemption does not undermine the State's interests in SB 277 in the same way that a religious exemption would.

In addition, California's medical exemption is not comparable to a religious belief exemption because the number of students that have a medical exemption is much smaller than the number of student likely to seek a religious exemption.  In <u>Doe</u>, the Ninth Circuit explained that a medical exemption to a vaccine mandate would not be "'comparable' to [a] religious exemption in terms of the 'risk' each exemption poses to the government's asserted interests" if the number of students who seek the medical exemption at issue is very small compared to "the number of students likely to seek a religious exemption."  19 F.4th at 1178; <u>see also, e.g.</u>, <u>We The Patriots</u>, 76 F.4th at 155 (explaining that the medical exemption at issue did not render the vaccination law underinclusive because "more than ten times as many students had religious exemptions than medical exemptions").  The

judicially noticeable facts in the record show that in the school year before SB 277 went into effect (2015-16), 2.4% of entering kindergarten students had a personal belief exemption while only 0.2% of entering kindergarten students had a medical exemption.[7] (See Doc. No. 50-1 at 23; Doc. No. 51-1, RJN, Exs. 15.4, 15.13, 16.10.)   The Court acknowledges that the number of entering kindergarten students with a medical exemption eventually grew to 1.0% in the 2019-20 school year, (see id.) but, in 2019, the California legislature adopted SB 276, which amended the criteria and requirements for the medical exemption.   See Cal. Stats. 2019 Reg. Sess., ch. 278; Cal. Health & Saf. Code § 120372. (See also Doc. No. 50-1 at 7.)   Following the passage of SB 276, in the 2021-22 school year, the number of entering kindergarten students with a medical exemption fell to 0.3% (a small number when compared to the 2.4%-3.2% of entering kindergarteners that previously held personal belief exemptions).   (See Doc. No. 50-1 at 23; Doc. No. 51-1, RJN, Exs. 16.3, 16.5, 16.10, 16.13.)   As such, California's medical exemption is not comparable to a religious exemption.

In their briefing, Plaintiffs cite to one out-of-circuit district court case, Bosarge v. Edney, 669 F. Supp. 598 (S.D. Miss. 2023), and assert that Bosarge stands for the proposition that vaccine mandates are not generally applicable under the Free Exercise Clause where they provide exemptions for medical reasons but not religious ones.[8]   (See

_____

[7]   The judicial noticeable facts also show that in the 2013-14 school year, the number of entering kindergarten students with a personal belief exemption was 3.2%.  (Doc. No. 51-1, RJN, Exs. 15.1, 15.6, 15.13.)

[8]   Plaintiffs also cite U.S. Navy Seals 1-26 v. Biden, 27 F.4th 336 (5th Cir. 2022), and UnifySCC v. Cody, No. 22-CV-01019-BLF, 2022 WL 2357068, at *10–11 (N.D. Cal. June 30, 2022).   But neither of these cases addresses the issue of whether making medical exemptions but not religious exemptions to a vaccine mandate renders the law at issue not generally applicable under the Free Exercise Clause.

In U.S. Navy Seals, the Fifth Circuit analyzed the plaintiffs' claims under the Religious Freedom Restoration Act without reviewing the portion of the district court's ruling that analyzed their claims under the Free Exercise Clause.  27 F.4th at 344–46 n.6. In UnifySCC, at the preliminary injunction stage, the district court held that the part of the

Doc. No. 52 at 18.)  Plaintiffs' reliance on <u>Bosarge</u> is not persuasive.  The medical exemption in question in <u>Bosarge</u> provided state officials with a mechanism to consider individualized exemptions, which the Supreme Court in <u>Fulton</u> explained is sufficient on its own to render a law not generally applicable.  See <u>Bosarge</u>, 669 F. Supp. at 610 ("A [medical exemption] may be offered on behalf of a child by a duly licensed physician and may be accepted by the local health officer when, in his opinion, such exemption will not cause undue risk to the community."); <u>see also</u> <u>Fulton</u>, 593 U.S. at 533–34.  The <u>Bosarge</u> court concluded that in light of the "method by which Mississippi officials could consider secular exemptions, particularly medical exemptions," the law was not neutral or generally applicable.  <u>Id.</u> at 617.  In contrast, SB 277 does not give state officials discretion to decide whether an individual's reasons for requesting a medical exemption are meritorious.  Rather, the medical exemption SB 277 provides are framed in objective terms: A child "shall be exempt" if the parent files with the governing authority a written statement by a licensed physician "to the effect that the physical condition of the child is such, or medical circumstances relating to the child are such, that immunization is not considered safe."  Cal. Health & Saf. Code § 120370(a) (West 2016), <u>current</u> Cal. Health & Saf. Code § 120370(a)(1)–(2); <u>see</u> <u>We The Patriots</u>, 76 F.4th at 150 (holding that the medical exemptions at issue were "mandatory and framed in objective terms" and not discretionary where the provisions at issue included language stating that students "shall be exempt" if the relevant requirements are met).  As such, the Court rejects Plaintiffs' reliance on <u>Bosarge</u>.

---

risk tier system at issue that "prioritizes employees in high-risk roles with secular exemptions over those with religious exemptions for consideration for vacant County positions is not neutral." 2022 WL 2357068, at *11. Nevertheless, despite this preliminary holding, at the summary judgment stage, the <u>UnifySCC</u> district court ultimately held that the risk tier system at issue was neutral and generally applicable, and the court granted summary judgment of the plaintiffs' Free Exercise claim in that case.  See <u>UnifySCC v. Cody</u>, No. 5:22-CV-01019-BLF, 2025 WL 215524, at *10–12 (N.D. Cal. Jan. 15, 2025). As such, Plaintiffs' reliance on <u>U.S. Navy Seals 1-26</u> and <u>UnifySCC</u> is not persuasive.

In sum, the medical exemption contained in § 120370 is not comparable to a religious belief exemption.  See, e.g., Doe, 19 F.4th at 1178; Miller, 2025 WL 665102, at *5–6; We The Patriots, 76 F.4th at 153; Hochul, 17 F.4th at 282, 285, 289–90; Spivack, 109 F.4th at 176; Mills, 16 F.4th at 30–31.  Accordingly, Plaintiffs have failed to show that § 120370's medical exemption preclude SB 277 from being generally applicable.

### ii.    An Exemption for Home Schooled Students Is Not Comparable to a Religious Exemption

California's immunization requirements "do[] not apply to a pupil in a home-based private school or a pupil who is enrolled in an independent study program pursuant to . . . the Education Code and does not receive classroom-based instruction."  Cal. Health & Saf. Code § 120335(f).  This exemption for home schooled children is not comparable to a religious based exemption because students enrolled in a home-based private school or an independent study program without classroom instruction do not inherently pose the same level of risk as students with personal belief or religious exemptions who would be granted full access to traditional classroom settings.  See Miller v. McDonald, 720 F. Supp. 3d 198, 217–18 (W.D.N.Y. 2024) (holding that the remaining alleged comparable secular activities, which include unvaccinated homeschooled children, do not render New York's statute generally applicable (citing We The Patriots, 76 F.4th at 156)).

Plaintiffs argue that the exemption set forth in § 120335(f) is comparable to a religious belief exemption because, contrary to Defendant's assertions, students in independent study programs are able to receive classroom instruction.  (See Doc. No. 52 at 17-18.)  In response, Defendant argues that Plaintiff's contention is based on a misreading of § 120335(f).  The Court agrees with Defendant.  Although § 120335(f) exempts certain students who are enrolled in an independent study program, it does not exempt all students who are enrolled in an independent study program.  Rather, it only specifically exempts students who are enrolled in an independent study program and who "do[] not receive classroom-based instruction."  Cal. Health & Saf. Code § 120335(f).  Thus, by its express terms, the exemption in § 120335(f) is limited to students who do not

receive classroom-based instruction.

Plaintiffs further contend that despite the plain text of § 120335(f) exempting students who "do[] not receive classroom-based instruction," exempted students may still actually receive classroom instruction up to 80% of the time. (Doc. No. 52 at 17.) To support this argument, Plaintiffs cite to the definition of "'nonclassroom instruction' or 'nonclassroom-based instruction'" contained in California Education Code § 47612.5. (Id.) See Cal. Educ. Code. § 47612.5(e). But Plaintiffs fail to explain how California Education Code § 47612.5, which governs "Charter School Operation," applies in any way to California Health & Safety Code § 120335(f). California Health & Safety Code § 120335(f) does not reference California Education Code § 47612.5, specifically, or charter schools, generally. Rather, California Health & Safety Code § 120335(f) only specifically references Article 5.5 of the California Education Code, which begins on section 51745 of the Education Code. See Cal. Health & Saf. Code § 120335(f) ("This section does not apply to a pupil in a home-based private school or a pupil who is enrolled in an independent study program pursuant to Article 5.5 (commencing with Section 51745) of Chapter 5 of Part 28 of the Education Code and does not receive classroom-based instruction.").

In sum, the home-schooling exemption contained in § 120335(f) is not comparable to a religious belief exemption. See, e.g., Miller, 720 F. Supp. 3d at 217–18. As such, Plaintiffs have failed to show that § 120335(f)'s exemption precludes SB 277 from being generally applicable.

### iii.    Exemption for Students Who Qualify for IEPs Is Not Comparable to a Religious Exemption

California's immunization requirements "do[] not prohibit a pupil who qualifies for an individualized education program, pursuant to federal [and state] law . . . from accessing any special education and related services required by his or her individualized education program." Cal. Health & Saf. Code § 120335(h). Plaintiffs argue that SB 277 is not generally applicable in light of this provision because, under this provision, unvaccinated students with IEPs are permitted to attend classes in person while students who are

unvaccinated due to religious beliefs are not permitted to do so.  (Doc. No. 52 at 18-19.)

The Ninth Circuit rejected a nearly identical argument in <u>Doe v. San Diego Unified School District</u>.  In <u>Doe</u>, the plaintiff argued that "in-person attendance by unvaccinated students who are subject to an Individualized Education Program (IEP) is comparable to in-person attendance by students who are unvaccinated for religious reasons."  <u>Doe</u>, 19 F.4th at 1184 n.3 (Ikuta, J., dissent).  Both the majority and the dissent in <u>Doe</u> rejected this argument.  <u>See id.</u> at 1179–80, 1184 n.3.  In her dissenting opinion, Judge Ikuta explained: "Students with an IEP are protected by a federal law that requires the School District to follow certain procedures before it can bar students from in-person attendance.  <u>See</u> 20 U.S.C. § 1415(j) (a student's IEP "shall remain" in effect pending completion of proceedings required to modify the IEP).  Because the vaccine mandate is not applicable to IEP students by force of federal law, [courts should] not take the in-person attendance of unvaccinated IEP students into account in determining whether the School District has imposed a mandate that is generally applicable."  <u>Id.</u> at 1184 n.3 (Ikuta, J., dissent).  The <u>Doe</u> majority agreed with Judge Ikuta on this point.  <u>See id.</u> at 1179 ("The dissent recognizes that in-person attendance by unvaccinated students with an IEP is not comparable to in-person attendance by students with religious objections to vaccination because federal law—the IDEA—requires that a school 'follow certain procedures before it can bar students [with IEPs] from in-person attendance'").  And so does this Court.  As such, § 120335(h)'s exemption for students with IEPs does not preclude SB277 from being generally applicable.[9]

---

[9]     The Ninth Circuit's decision in <u>Stormans</u> is also instructive here.  In <u>Stormans</u>, the plaintiffs brought a Free Exercise challenge to Washington state rules requiring pharmacies to deliver all prescription medications, even if a pharmacy's owner had a religious objection to delivering a particular medication.  794 F.3d at 1071.  The plaintiffs in <u>Stormans</u> argued the rules were substantially underinclusive because they carved out several secular exemptions, including exemptions for "when the prescription cannot be filled due to lack of payment," when "the prescription may be fraudulent, erroneous, or incomplete," and when "the pharmacy lacks specialized equipment or expertise."  <u>Id.</u>  The

iv.    Exemption for Students 18 Years of Age or Older Is Not Comparable to a Religious Exemption

California's immunization requirements do "not apply to any person 18 years of age or older." Cal. Health & Saf. Code § 120360. At the hearing on the present motion to dismiss, Plaintiffs raised for the first time their contention that the exemption set forth in § 120360 renders SB277 not generally applicable. In the operative complaint, Plaintiffs never mention or refer to § 120360. (See generally Doc. No. 48, TAC ¶¶ 35-72.) As such, Plaintiffs' contentions regarding § 120360 can be rejected for that reason alone.

Nevertheless, even if the operative complaint had contained allegations regarding § 120360, Plaintiffs have failed to demonstrate that § 120360's exemption for students 18 years of age or older is comparable to a religious belief exemption. In order to qualify for an exemption under § 120360, the student must be 18 years of age at the time the student is first admitted to a private or public elementary or secondary school, child care center, day nursery, nursery school, family day care home, or development center. See Cal. Health & Saf. Code § 120360. In light of this, the number of unvaccinated students that qualify for an exemption under § 120360 is likely small in comparison to the number of

---

Ninth Circuit disagreed, concluding that "the enumerated exemptions are necessary reasons for failing to fill a prescription in that they allow pharmacies to operate in the normal course of business." Id. (internal quotation marks omitted). It further noted that "the absence of these exemptions would likely drive pharmacies out of business," and that they served the state interest of increasing safe access to medications. Id. The Ninth Circuit concluded that accordingly, Washington's rules were generally applicable and not substantially underinclusive. Id. at 1080-81, 1084. Just as the exemptions in Stormans acknowledged circumstances under which the State could not practically require a pharmacy to deliver a prescription, § 120335(h) acknowledges a circumstance under which California cannot practically require a student to comply with its state immunization requirements due to protections afforded by federal law. See also Spivack, 109 F.4th at 174 (vaccination requirement not precluded from being generally applicable by exception for unionized employees, whose vaccination requirements were governed by their collective bargaining agreement, because the city "cannot be faulted for complying with collective bargaining agreements that [it] had no role in negotiating or implementing").

unvaccinated students that would qualify for a religious belief exemption. And Plaintiffs have not provided the Court with any facts or factual allegations to the contrary. In <u>Doe</u>, the Ninth Circuit explained that an exemption to a vaccine mandate would not be "'comparable' to [a] religious exemption in terms of the 'risk' each exemption poses to the government's asserted interests" if the number of students who seek the exemption at issue is very small when compared to "the number of students likely to seek a religious exemption." 19 F.4th at 1178; <u>see also, e.g.</u>, <u>We The Patriots</u>, 76 F.4th at 155 (explaining that the exemption at issue did not render the vaccination law underinclusive because "more than ten times as many students had religious exemptions than" the exemption at issue). § 120360's exemption is also not comparable in that students 18 years of age will generally spend much less time within the school system than students with religious exemptions, who can carry a religious exemption for the entire duration of their schooling (from preschool through grade 12). Therefore, § 120360's exemption for students 18 years of age or older does not undermine the State's asserted interests in student health and safety the way a religious exemption would. As such, § 120360's exemption for students 18 years of age or older does not preclude SB277 from being generally applicable

> v. <u>Conditional Enrollment for Migrant, Homeless, Foster, and Military Children Is Not Comparable to a Religious Exemption</u>

California law provides that a student "who has not been fully immunized" may nonetheless be admitted to school "on condition that within time periods designated by regulation of the department he or she presents evidence that he or she has been fully immunized." Cal. Health & Saf. Code § 120340. Conditional admission is specifically authorized for students who are homeless, in "migrant" status, in foster care, or in military families, pending proof of the student's vaccination status. <u>See</u> Cal. Educ. Code §§ 48204.7, 48850, 48852.7, 49069.5, 49701; Cal. Health & Saf. Code §§ 120340, 120341. Students who are conditionally admitted must provide their immunization records within 30 days. Cal. Code Regs. tit. 17, § 6035(d)(1).

Plaintiffs argue that these provisions for conditional enrollment constitute an

exemption to California's immunization requirements that renders SB 277 not generally applicable.  (Doc. No. 52 at 17-18.)  But the 30-day grace period in § 120340 is not comparable to a permanent religious or personal belief exemption.  As the Ninth Circuit explained in Doe, a 30-day conditional enrollment period for certain categories of newly enrolling students raises no serious question as to a vaccine mandate's general applicability, because the conditionally enrolled students "are not exempted from the vaccination requirement itself."  Doe, 19 F.4th at 1179.  Rather, they "are simply given a grace period."  Id.  Therefore, the conditional enrollment exception does not treat "conditional enrollees more favorably than students who invoke religious beliefs as their ground for remaining unvaccinated."  Id. (citing Tandon, 141 S. Ct. at 1296).  In addition, because "the conditional enrollment period is both of temporary duration and of limited scope, and [it] does not undermine [the States]'s asserted interests in student health and safety the way a religious exemption would."  Id. (citing Lukumi, 508 U.S. at 542–43; We The Patriots, 17 F.4th at 285–88).

In an attempt to support their claim, Plaintiffs allege facts in the TAC regarding conditional enrollment, specifically Plaintiffs allege that "[m]any schools have allowed foster children, homeless children, and migrant students to enroll in school unvaccinated for the entire duration of the school year, as allowed by state law."  (Doc. No. 48, TAC ¶ 56.)  They further allege that "[t]he state does not require school districts to disenroll students if they do not provide proof of vaccination within thirty days.  There are circumstances when school districts . . . spend the entire school year trying to ensure students are compliant."  (Id. ¶ 57.)  They also allege that "there are circumstances where school districts can take more than an entire school year to confirm compliance.  The state is primarily concerned that schools make a good faith effort to ensure compliance."  (Id. ¶ 58.)  But even accepting these allegations as true, the fact that the State laws might sometimes be broken does not itself mean that those laws are not generally applicable.

The Ninth Circuit considered a similar situation in Stormans.  In that case, the district court had found that in addition to the enumerated exemptions to Washington's rules

requiring pharmacies to deliver prescriptions, there also existed "scenarios" where "a pharmacy's refusal to deliver medication was 'permitted in practice' despite the lack of an enumerated exemption in the text of the rules." <u>Stormans</u>, 794 F.3d at 1080. But the state commission that promulgated the rules at issue in <u>Stormans</u> had never issued an official interpretation suggesting these practices were permitted. <u>Id.</u> at 1081. Moreover, it had not received any complaints about these practices that could have prompted it to decide whether to investigate and initiate an enforcement action. <u>Id.</u> For those reasons, the Ninth Circuit concluded that while the district court did not err by finding the practices had occurred, it "clearly erred by concluding that the Commission permitted those practices or exempted them from enforcement." <u>Id.</u> at 1080–81. Accordingly, the Ninth Circuit concluded that the evidence of unenumerated exemptions to Washington's rules did not demonstrate that the rules were substantially underinclusive. <u>Id.</u> at 1081.

Similarly, while Plaintiffs here allege that some school districts are not complying with State's rules governing conditional admission, Plaintiffs do not sufficiently allege that the State permits these school districts' alleged practices, such that it constitutes an unwritten exemption provided by the State. As explained above, CDPH is the body tasked with adopting and enforcing the regulations necessary to carry out California's immunization requirements. Cal. Health & Saf. Code § 120330. Under its regulations, if a conditionally admitted student's immunization record has not been received within 30 days, "the governing authority shall exclude the pupil from further attendance until the parent or guardian provides documentation of compliance with the immunization requirements." Cal. Code Regs. tit. 17, § 6035(d)(1). The "governing authority" is the entity responsible for the school's operation and control, such as the principal or the governing board of the school district. Cal. Code Regs. tit. 17, §§ 6000(b), 6035(d)(1); Cal. Health & Saf. Code § 120335(a). Accordingly, while Plaintiffs allege that California does not require school districts to disenroll students who do not provide their immunization records within 30 days, the regulations above show that the State does require school districts to exclude such students from attendance at school until they

provide the required documentation.  And although Plaintiffs allege that the State is only "primarily concerned that schools make a good faith effort to ensure compliance," (Doc. No. 48, TAC ¶ 58), they allege no factual support for this conclusory statement, and the Court cannot draw this inference from the school districts' alleged practices alone.  In sum, while Plaintiffs allege generally that some school districts do not always follow CDPH regulations governing conditional admission, they have not alleged facts showing that CDPH condones or permits these school districts' practices.  As such, Plaintiffs have not shown that California's provisions for conditional enrollment make SB 277 substantially underinclusive such that it cannot be considered generally applicable.  See Doe, 19 F.4th at 1179.

Overall, Plaintiffs have not sufficiently alleged that SB 277 treats any secular activity more favorably than religious exercise by precluding exemptions for religious beliefs while permitting certain secular exemptions.  Accordingly, SB 277 is generally applicable.

### 3.    Rational Basis Review

Because SB 277 is neutral and generally applicable, rational basis review applies. See Stormans, 794 F.3d at 1084; see also Church of Lukumi Babalu Aye, 508 U.S. at 531. "'Rational basis review is highly deferential to the government, allowing any conceivable rational basis to suffice.'"  Borja v. Nago, 115 F.4th 971, 983 (9th Cir. 2024); see also Raidoo v. Moylan, 75 F.4th 1115, 1121 (9th Cir. 2023) ("Rational basis review is 'a paradigm of judicial restraint.'" (quoting F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 314 (1993)).  Under rational basis review, a court must uphold a law "if the government has a legitimate interest in enacting the statute, and the law is rationally related to that interest." Raidoo, 75 F.4th at 1121; see Dobbs v. Jackson Women's Health Org., 597 U.S. 215, 301 (2022).

Under this test, "[a] statute is presumed constitutional, and the burden is on the one attacking the legislative arrangement to negate every conceivable basis which might support it, whether or not the basis has a foundation in the record." Heller v. Doe by Doe,

509 U.S. 312, 320–21 (1994) (cleaned up) (quoting <u>Lehnhausen v. Lake Shore Auto Parts Co.</u>, 410 U.S. 356, 364 (1973)); <u>see</u> <u>Dobbs</u>, 597 U.S. at 301 (explaining that laws subject to rational basis review are "entitled to a 'strong presumption of validity'"). Furthermore, a "[l]egislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." <u>Beach Commc'ns</u>, 508 U.S. at 315. Courts are also "compelled . . . to accept a legislature's generalizations even when there is an imperfect fit between means and ends." <u>Heller</u>, 509 U.S. at 321.

The State has a legitimate interest in protecting the health and safety of students and the public at large. <u>See</u> <u>Stormans</u>, 794 F.3d at 1084; <u>Goe</u>, 43 F.4th at 32. While Plaintiffs do not dispute the State's legitimate interest in protecting the health and safety of students and the public at large (indeed, Plaintiffs characterize it as a compelling interest), they argue that SB 277 fails to pass even rational basis review. (Doc. No. 52 at 24-25.) In support of their contention, Plaintiffs allege that California's vaccination rates were already high when SB 277 was enacted and that allowing religious exemptions would not cause immunity to drop below the herd immunity threshold. (Doc. No. 48, TAC ¶¶ 110-12, 115, 117, 119.) They also allege that many of the required vaccines do not contribute to herd immunity. (<u>Id.</u> ¶ 123.) They further allege that personal belief exemption requests were declining when SB 277 was enacted and that medical exemptions have increased since 2016. (<u>Id.</u> ¶¶ 113-14.) They argue that permitting religious or personal belief exemptions poses no greater risk than the risks posed by the State's current immunization requirements. (<u>Id.</u> ¶¶ 118, 120-21.) They also allege facts showing that even those who have received some of the required vaccinations can develop infections or transmit the virus against which they were vaccinated. (<u>Id.</u> ¶¶ 123-139.) Lastly, they allege that the mandatory vaccinations contain harmful ingredients and pose known risks, and object to the methods by which the vaccines were tested. (<u>Id.</u> ¶¶ 73-109.)

Under rational basis review, the "[l]egislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." <u>Beach Commc'ns</u>, 508 U.S. at 315. Here, according to the legislative history, SB

277 was introduced in response to the 2015 measles outbreak in California and reports from the CDC that there were more measles outbreaks in January 2015 in the United States than in any one month in the twenty years prior.  (<u>See</u> Doc. No. 36-3, Ex. 4 at 2, Ex. 5 at 5 ("Measles has spread through California and the United States, in large part, because of communities with large numbers of unvaccinated people.").)  And importantly, SB 277's legislative history identified a significant rise in personal belief exemptions – a 337% increase between 2000 and 2012 – which placed communities at risk of preventable diseases.  (<u>Id.</u>)  <u>See also</u> <u>Love v. State Dep't of Educ.</u>, 29 Cal. App. 5th 980, 992–93 (2018) ("As is noted in [SB 277's] legislative history, studies have found that "when belief exemptions to vaccination guidelines are permitted, vaccination rates decrease," and community immunity wanes if large numbers of children do not receive required vaccinations.'").  Thus, SB 277 is rationally related to the State's interest in slowing the spread of infectious diseases.  <u>See</u> <u>Love</u>, 29 Cal. App. 5th at 992–93 (finding that SB 277 "is narrowly circumscribed to address the goal of the law").

California has a legitimate interest in protecting the health and safety of students and the public at large, and SB 277's repeal of California's prior personal belief exemption is rationally related to furthering that interest.  Because Plaintiffs fail to allege facts from which an inference can be drawn to hold otherwise, SB 277 survives rational basis review.  As such, Plaintiff's third amended complaint fails to state a claim under the Free Exercise Clause.

/ / /

/ / /

/ / /

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to dismiss and dismisses Plaintiffs' third amended complaint. Further, because the deficiencies in the operative complaint identified above cannot be cured by amendment of the complaint, the Court dismisses Plaintiff's third amended complaint with prejudice and without leave to amend. See United States v. Corinthian Colleges, 655 F.3d 984, 995 (9th Cir. 2011) (explaining that leave to amend is only "warranted if the deficiencies can be cured with additional allegations that are 'consistent with the challenged pleading' and that do not contradict the allegations in the original complaint"). The Clerk is directed to close the case.

**IT IS SO ORDERED.**

DATED: March 17, 2025

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT